**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | |
|---|---|
| JUSTIN A. EASLEY,<br><br>*Plaintiff*,<br><br>v.<br><br>OFFICER MATT WILT et al.,<br><br>Defendants. | Case No. 2:25-cv-00088-MAL |

**MEMORANDUM AND ORDER**

Justin Easley, a self-represented litigant, filed a complaint under 42 U.S.C. § 1983 (Doc. 1) and a Motion for Leave to Proceed *in Forma Pauperis* (Doc. 2). Easley alleges that officers of the Hannibal Police Department violated his constitutional rights during an encounter at the police station on December 10, 2024. (Doc. 1 at 6). The Court grants Easley's *in forma pauperis* motion and reviews his complaint under 28 U.S.C. § 1915(e)(2). Under 28 U.S.C. § 1915(e)(2), the following claims must be dismissed: the failure-to-intervene claim against Officer Knacke; the *Monell* claim against the Hannibal Police Department; and the deliberate indifference claims against all the officers.

## I. Background

On December 10, 2024, Easley visited the Hannibal Police Department to retrieve public records. (Doc. 1 at 6). A clerk at the station ran Easley's name, discovered two traffic-related warrants, and notified Defendant Officer Mackey. *Id.* Mackey booked Easley on the warrants and released him without incident. *Id.*

After his release, Easley remained in the lobby and asked to speak with a supervisor about filing a complaint. *Id.* Defendant Officer Wilt arrived approximately ten minutes later. *Id.* Rather than providing a complaint packet, Wilt told Easley, "How about you go sell some more meth"—a reference to a dismissed drug case that Wilt had previously initiated against Easley. *Id.* Easley alleges that Wilt's remark demonstrated personal bias and retaliation. *Id.*

Wilt then told Easley to leave and shoved him. *Id.* Easley alleges that he instinctively removed Wilt's hand from his body as a natural defensive response. *Id.* Defendant Officer Grote, who had been observing the encounter, entered the lobby and performed a leg sweep on Easley. *Id.* Mackey then deployed her taser on Easley. *Id.* at 7. Wilt later testified that he told Mackey not to deploy the taser because he and Grote "had the situation handled." *Id.*

Wilt held Easley in an arm lock, placed him in handcuffs, and told him to "shut up." *Id.* Defendant Chief Jacob Knacke arrived on the scene and did not intervene. *Id.* After the taser deployment, Wilt and Grote personally removed the taser darts from Easley's body and did not provide or offer any medical attention. *Id.*

On July 28, 2025, a state court sentenced Easley to 30 days' incarceration and a $2,000 fine for two counts of fourth-degree assault and resisting detention arising from this encounter. *Id.*

Easley sues Wilt, Grote, Mackey, and Knacke in their individual capacities. (Doc. 1 at 2–3). He also asserts a *Monell* claim against the Hannibal Police Department. *Id.* at 3. Easley seeks compensatory and punitive damages, injunctive and declaratory relief, and costs. *Id.* at 6.

## II. Legal Standard

Under 28 U.S.C. § 1915(e)(2), the Court must dismiss a complaint filed *in forma pauperis* if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

To determine whether a complaint states a plausible claim for relief, the Court must engage in "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). In doing so, the Court must "accept as true the facts alleged, but not legal conclusions." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).

When reviewing a self-represented person's complaint under § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984) (per curiam), and liberally construes the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). A "liberal construction" means that, if the Court can discern "the essence of an allegation," the "[C]ourt should construe the complaint in a way that permits" the Court to consider the claim within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Even so, self-represented plaintiffs must allege facts that, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). The Court need not assume unalleged facts. *Stone*, 364 F.3d at 914–15 (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff). Nor must it interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## III. Discussion

### A. Failure-to-Intervene Claim Against Officer Knacke

To establish a failure-to-intervene claim, a plaintiff must show that the officer (1) "observed or had reason to know that excessive force would be or was being used," and (2) "had both the opportunity and the means to prevent the harm from occurring."

*Dukeman v. Ste. Genevieve Cnty.*, 167 F.4th 500, 505 (8th Cir. 2026) (quoting *Robinson v. Payton*, 791 F.3d 824, 829 (8th Cir. 2015)). Easley alleges that Knacke arrived on the scene and "did nothing to intervene despite hearing the incident, compounding the excessive use of force." (Doc. 1 at 7).

But the Complaint's own chronology defeats this claim. Easley alleges that Knacke arrived after the alleged excessive use of force. *Id.* By Easley's own account, all of the physical force—the shove, the leg sweep, and the taser deployment—concluded before Knacke appeared on the scene. *See id.* at 6–7. The only ongoing aggressive or offensive conduct the Complaint attributes to any officer at the time Knacke arrives is Wilt's verbal command to "shut up," which is not excessive force. *Id.* at 7; *see Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (stating that "verbal threats are not constitutional violations cognizable under § 1983"). Easley's allegation that Knacke heard the incident does not negate the fact that Knacke arrived after the use of force. (Doc. 1 at 7). Awareness of force already applied does not alone create a realistic opportunity to prevent it. And Easley's characterization of Knacke's inaction as "compounding the excessive use of force," (Doc. 1 at 7), is a legal conclusion that the Court need not accept. *See Iqbal*, 556 U.S. at 678. The Court therefore dismisses Easley's failure-to-intervene claim against Knacke.

**B. *Monell* Claim against The Hannibal Police Department**

Easley asserts a *Monell* claim against the Hannibal Police Department. (Doc. 1 at 3). This claim fails for two independent reasons.

First, a police department is a subdivision of local government and is not a suable entity under § 1983. *Ketchum v. City of West Memphis*, 974 F.2d 81, 82 (8th Cir. 1992).

Second, even setting aside the suability issue, Easley's *Monell* allegations do not state a plausible claim. Section 1983 permits suits against local governing bodies, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), but liability attaches only where the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise," *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). Easley references "Department

policies in which [the officers] claim to have acted on" and seeks injunctive relief ordering policy reforms. (Doc. 1 at 6–7). He does not, however, identify any specific unconstitutional policy, custom, or practice, nor does he allege facts supporting an inference of deliberately indifferent training or supervision. *Id.* These conclusory assertions amount to nothing more than a "formulaic recitation of the elements" and therefore do not state a *Monell* claim. *Iqbal*, 556 U.S. at 681; *see also Mitchell v. St. Louis Cnty.*, 160 F.4th 950, 964 (8th Cir. 2025). The Court therefore dismisses Easley's claim against the Hannibal Police Department.

**C. Excessive Force Claims against Officers Wilt, Grote, and Mackey**

Liberally construing the Complaint, the Court identifies Fourth Amendment excessive force claims against Wilt, Grote, and Mackey. The claims survive initial review.

When assessing excessive force claims, courts ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Stewart v. Garcia*, 139 F.4th 698, 705 (8th Cir. 2025) (quoting *Lombardo v. City of St. Louis*, 594 U.S. 464, 466 (2021)). Relevant factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* But *de minimis* use of force is not actionable under the Fourth Amendment. *Robinson v. Hawkins*, 937 F.3d 1128, 1136 (8th Cir. 2019).

The Complaint fairly alleges facts suggesting that Wilt acted unreasonably under the circumstances. True, the initial shove may have been *de minimis*. (Doc 1 at 6). But the Complaint also alleges that Wilt performed an arm lock maneuver and placed Easley in handcuffs sometime after Grote and Mackey entered the fray. (Doc. 1 at 7). By that time, according to the Complaint, Grote had performed a leg sweep maneuver, and Mackey had tased Easley. (Doc. 1 at 6–7). It is reasonable to infer from the Complaint that Easley was incapacitated at this point. *See Garcia*, 139 F.4th at 706 ("[a] taser . . . is designed to incapacitate instantly."). Thus, the Complaint plausibly alleges that Wilt did not need to use the arm lock to arrest Easley. *See id.* at 705 (suspect's active resistance against arrest is a factor bearing

on reasonableness). That is enough for the excessive force claim to survive initial review.

Similarly, the Complaint fairly alleges facts suggesting that Grote acted unreasonably by performing the leg sweep against Easley. (Doc. 1 at 6). True, Easley laid his hand on Wilt following Wilt's shove. *Id.* But reading the Complaint in the manner most favorable to the Plaintiff, as the Court must at this point,[1] this was a natural, reflexive response, not an act of aggression. *Id.* Moreover, it is reasonable to infer from the Complaint that Grote had been observing the whole encounter. *Id.* He therefore would have witnessed Wilt shoving Easley. *Id.* It is reasonable to infer that the leg sweep could have been a hasty overreaction rather than a reasonable response to threatened aggression. At this stage of the proceedings, it is entirely plausible to suppose—based on the facts alleged—that Grote used an unreasonable amount of force under the circumstances.

In addition, Mackey acted unreasonably by tasing Easley. *Id.* at 7. Although Wilt told Mackey that he and Grote had the situation under control, the Complaint alleges that Mackey tased Easley anyway. *Id.* Because there was no need to tase Easley, Mackey acted unreasonably, and this excessive force claim survives.

The Complaint adequately alleges that Wilt, Grote, and Mackey acted unreasonably under the circumstances. Thus, the Fourth Amendment excessive force claims against all three officers survive initial review.

**D. Deliberate Indifference Claims against All Officers**

The Court, liberally construing the Complaint, identifies Fourteenth Amendment deliberate indifference claims against Officers Wilt, Grote, Mackey, and Knacke. The Court dismisses these claims.

A plaintiff making a deliberate indifference claim must show that the defendants ignored "an objectively serious medical need." *Stewart v. Garcia*, 139 F.4th 698, 708 (8th Cir. 2025). "A medical need is objectively serious if it has been diagnosed by a physician as requiring treatment or if it is so obvious that even a

[1] *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 (8th Cir. 2009).

layperson would easily recognize the necessity for a doctor's attention." *Barton v. Taber,* 908 F.3d 1119, 1124 (8th Cir. 2018) (internal quotations omitted).

Easley had no objectively serious medical need. The Complaint does not allege that a physician ever diagnosed Easley as requiring treatment. (Doc. 1 at 6–7). Nor does the Complaint allege that the force used against Easley caused him to suffer any medical symptoms. *Id.* Easley's allegation that he "required proper medical evaluation" is a legal conclusion, not a proper factual allegation. *Id.* at 7. The Complaint alleges no facts suggesting a layperson observing the incident would have concluded that Easley required medical attention. *See Barton*, 908 F.3d at 1124.

Because Easley alleges no objectively serious medical need, the deliberate indifference claims against Wilt, Grote, Mackey, and Knacke all fail.

### E. First Amendment Retaliation Claim against Officer Wilt

Liberally construing the Complaint, the Court identifies a First Amendment retaliation claim against Wilt. The claim survives initial review.

"The three elements of a First Amendment retaliation claim are: (1) the plaintiff engaged in protected activity, (2) the government took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Wolk v. City of Brooklyn Ctr.*, 107 F.4th 854, 859–60 (8th Cir. 2024). Before Easley's encounter with the Officers, Easley sought to file a complaint against the Hannibal Police Department due to allegedly unfair treatment. (Doc. 1 at 6). Thus, the Court must determine whether Easley sought to engage in protected activity under the First Amendment.

The First Amendment protects the filing of a complaint against a police department. As the Supreme Court has recognized, "[s]peech on matters of public concern is at the heart of the First Amendment's protection." *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011). Matters of public concern include anything of "political, social, or other concern to the community." *Id.* at 453. Clearly, the conduct of a police department is a matter of concern to the community. Members of the community would be concerned to learn that a police department was treating people unfairly.

Therefore, in seeking to file a complaint alleging unfair departmental conduct, Easley sought to voice his concerns on a matter of public concern. Thus, he sought to engage in protected First Amendment activity.

The second and third elements of a First Amendment retaliation claim are straightforwardly satisfied in this case. *See Wolk*, 107 F.4th at 859–60. Wilt allegedly shoved Easley. (Doc. 1 at 6). It is possible that people of ordinary firmness might refrain from speaking their minds if they expected physical force from police in response. *Cf. Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (recognizing that "pepper spraying someone in the face would chill a person of ordinary firmness") (abrogated on other grounds by *Laney v. City of St. Louis*, 56 F.4th 1153, 1157 n.2 (8th Cir. 2023)); *see also Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003) ("[s]ince there is no justification for harassing people for exercising their constitutional rights[,] [the retaliation] need not be great in order to be actionable"). Thus, the adverse action element seems to be satisfied here.[2] Similarly, the factual allegations suggest that Easley's attempted filing of the complaint motivated Wilt to shove him. The Complaint alleges that after Easley asked to file a complaint, Wilt insulted Easley and then shoved him. (Doc. 1 at 6). It is reasonable to infer that Easley's attempt to file a complaint aggravated Wilt, causing him to insult and shove Easley. Thus, the retaliation element is satisfied.

Because the three elements of a First Amendment retaliation claim are satisfied at this stage, Easley's First Amendment retaliation claim against Wilt survives initial review.

## IV. Conclusion

For the foregoing reasons, the Court grants Easley's motion to proceed *in forma pauperis* and finds that his Complaint states plausible claims for Fourth Amendment

---

[2] The Court does not reach the issue of whether a qualified immunity defense based on the absence of a clearly established right would succeed. *Stewart v. Garcia*, 139 F.4th 698, 705–06 (8th Cir. 2025). This is an initial review under § 1915(e)(2). In the Court's judgment, such a review is not intended to be especially rigorous. Otherwise, § 1915(e)(2) review would frustrate the ordinary processes of adversarial litigation. Congress probably did not intend such a result.

excessive force against Wilt, Grote, and Mackey; and for First Amendment retaliation against Wilt. The Court dismisses Easley's claims against Knacke and the Hannibal Police Department.

Accordingly,

**IT IS HEREBY ORDERED** that Easley's Motion for Leave to Proceed *In Forma Pauperis* (Doc. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process on Easley's Complaint (Doc. 1) as to Defendants Wilt, Grote, and Mackey in their individual capacities at the addresses provided in the Complaint.

**IT IS FURTHER ORDERED** that Easley's claims against Defendant Knacke and Defendant Hannibal Police Department are **DISMISSED**. A separate Order of Partial Dismissal accompanies this Memorandum and Order.

Dated this 30th day of September, 2026.

Maria A. Lanahan

MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE